Joe HERNANDEZ, III, Petitioner–
Appellant,

v.

Larry SMALL, Warden, Respondent–
Appellee.

No. 00–56286.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 6, 2002 *

Filed March 7, 2002.

---

* Hernandez's Request to Submit Case for Decision Without Oral Argument was granted in an unpublished order. *See* Fed. R.App. P. 34(a)(1) & (a)(2)(C).

Judith Rochlin, Los Angeles, CA, for the petitioner-appellant.

Bill Lockyer, Attorney General; Robert R. Anderson, Chief Assistant Attorney General; Pamela C. Hamanaka, Senior Assistant Attorney General; Susan D. Martynec, Supervising Deputy Attorney General; Robert D. Breton, Deputy Attorney General, Los Angeles, CA, for the respondent-appellee.

Before: ARCHER[**], O'SCANNLAIN, and SILVERMAN, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

In this habeas case, we must decide whether the admission of testimony at a criminal trial in state court was contrary to or involved an unreasonable application of the Supreme Court's Confrontation Clause jurisprudence.

## I

### A

The underlying convictions in this case arose from two separate incidents that took place on August 10, 1993 in El Monte, California.[1] At approximately 7:00 p.m. that evening, Joe Hernandez and his subsequent codefendant Robert Cota, both members of the El Monte Flores gang, met at the home of fellow gang-member Arthur Lopez. Hernandez was armed with a gun. Hernandez and Cota left Lopez's home riding Lopez's bicycle; Cota was pedaling the bicycle with Hernandez sitting on the handlebars. The pair bicycled to Medina Court, a shopping center which is considered to be in the territory of the El Monte Hayes gang—a Flores gang rival. There the pair spotted Raphael Torres, a Hayes gang member. Torres, upon seeing Hernandez and Cota, shouted his Hayes gang affiliation. Unimpressed, Hernandez responded by getting off the bicycle, brandishing his gun, and shooting Torres several times. Torres, who was

not armed, died as a result of the multiple gunshot wounds.

Hernandez and Cota then rode to Lopez's home, where they returned his bicycle. The pair then retrieved Cota's bicycle from Cota's home, and once again rode off. At approximately 9:00 p.m., while riding Cota's bicycle near Crawford's Market in El Monte, with Cota again pedaling the bicycle and Hernandez sitting on the handlebars, the two men stopped a car. Alberto Perez Gonzalez, the car's owner, was driving; Julio Cesar Silva was a passenger. Hernandez got off the bicycle, approached Silva on the passenger side of the car, and asked from where he hailed. Silva, who was not a gang member, responded that he was from Rosemead. Hernandez put a gun to Silva's head, and ordered him to get out of the car and kneel on the ground, placing his hands behind his head. Hernandez told Silva that he was going to die, then fulfilled his prophecy, shooting Silva in the head. Silva died as a result of the gunshot wound.

Meanwhile, Cota approached Gonzalez on the driver's side, and ordered him out of the car. After Silva was shot, Gonzalez charged Hernandez and struggled with him for the gun. Cota joined in the struggle and kicked Gonzalez a number of times in the stomach. During the struggle the gun discharged, striking Gonzalez in the chest. Hernandez then shot Gonzalez twice more, striking him in the shoulder and back. Leaving Gonzalez for dead, Hernandez and Cota drove Gonzalez's car away from the scene; they later abandoned it. Gonzalez, however, survived.

After their arrest several months later both Hernandez and Cota made state-

---

[**] The Honorable Glenn L. Archer, Jr., Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

[1]. This statement of facts is taken from the Report and Recommendation of the Magistrate Judge below. As the Magistrate observed, a determination of a factual issue made by a State court shall be presumed to be correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Hernandez does not seriously challenge these facts on appeal.

ments to the police. Hernandez admitted his involvement in the shootings but stated that he had been under the influence of drugs at the time, and was not thinking clearly. He told police that the shooting at Crawford's Market occurred because he and Cota had nearly been hit by Gonzalez's car. According to Hernandez, Gonzalez and Silva had then "started to rush" him and Cota, and Silva had "cuss[ed him] out" in Spanish; Silva and Hernandez started fighting, and Hernandez shot him. Cota also spoke to the police. Among other things, Cota acknowledged that the reason he, Cota, had ridden to Crawford's Market the night of the murders was to steal a car.

B

Hernandez was tried in the California Superior Court of Los Angeles County for various violations of California criminal law. Both Hernandez and Cota invoked their Fifth Amendment rights not to testify. Accordingly, they were tried before separate juries. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *People v. Aranda*, 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265 (1965). At Hernandez's trial the prosecutor sought to introduce, through the testimony of Police Detective Castillo, several of Cota's self-inculpatory extrajudicial statements, which were sanitized by excising all references to Hernandez. Hernandez objected to the admission of one of these statements, indicating that Cota's intent in riding his bicycle to Crawford's Market was to steal a car. Hernandez claimed that admission of this statement would violate the California evidentiary rules, and also his constitutional right to confront witnesses. He noted that he would have no opportunity to cross-examine Cota, who was unavailable to testify because he had invoked his Fifth Amendment rights.

The state trial court concluded that the statement did indeed fall within California's hearsay exception for declarations against penal interests,[2] and accordingly, that its admission would not violate the Confrontation Clause. Relying on *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), that court concluded that admission of the testimony was proper because declarations against penal interest are a firmly rooted exception to the hearsay rule. Accordingly, the prosecutor was allowed to ask Castillo, "Did [Cota] tell you why he rode his bike to Crawford's Market?", to which Castillo replied, "To take a car." Defense counsel cross-examined Castillo to confirm that Cota's statement solely concerned his own intent and implicated no one other than Cota.

Hernandez was ultimately convicted on four counts, including the second degree murder of Raphael Torres; the first degree murder of Julio Cesar Silva; the attempted murder of Alberto Perez Gonzalez; and the second degree robbery of Silva and Gonzalez. The penalty phase proceeding and a retrial thereof both resulted in mistrials. On September 27, 1995, Hernandez was sentenced to state prison for a term of life without parole, plus eight years, with additional consecutive terms of 23 years to life and life plus eight years.

Hernandez appealed his conviction to the California Court of Appeal. He con-

---

2. Under California law,

Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, ... so far subjected him to the risk of civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true.

Cal. Evid.Code § 1230.

tended, *inter alia*, that the admission of Cota's statement violated his rights under the Confrontation Clause. The Court of Appeal was unpersuaded; it affirmed Hernandez's conviction in an unpublished opinion on March 10, 1997.

Hernandez next filed a petition for review to the California Supreme Court, seeking review of his Confrontation Clause claim; the Court denied the petition without comment or citation on June 10, 1997. Accordingly, Hernandez's conviction became final on September 8, 1997. *See Bowen v. Roe,* 188 F.3d 1157, 1158–59 (9th Cir.1999). Hernandez also filed a habeas petition in the California Supreme Court, raising the same allegations he made in the present petition; the Supreme Court denied that petition without comment or citation.

Hernandez then filed a pro se petition for a writ of habeas corpus in the United States District Court for the Central District of California. Following the Report and Recommendation of the Magistrate Judge, the court denied the petition. Hernandez appealed. A motions panel of this court assigned him counsel, and granted a certificate of appealability limited to the following issues: (1) whether admission of Cota's statement against interest violated his Confrontation Clause rights, and (2) if so, whether the error had a substantial and injurious effect on the jury's verdict.

## II

■ The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. am. VI.[3] In its 1980 decision in *Ohio v. Roberts,* the Supreme Court set forth the requirements for admission of a hearsay statement in a criminal trial when the declarant is unavailable, consistent with the requirements of the Confrontation Clause. 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Court explained that such a statement "is admissible only if it bears adequate 'indicia of reliability.'" *Id.* at 66, 100 S.Ct. 2531. Adequate reliability, the Court continued, can be demonstrated in one of two ways. First, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* Second, if the evidence does not fall within a firmly rooted exception, it may be admitted if there is a sufficient "showing of particularized guarantees of trustworthiness."[4] *Id.*

In its ruling in this case, the California Court of Appeal relied on the first of these methods for demonstrating reliability. Applying *People v. Wilson,* 17 Cal.App.4th 271, 277, 21 Cal.Rptr.2d 420 (1993), it reasoned that "[w]hen testimony, although hearsay, has 'sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied,'" and concluded that "[t]he declaration against interest exception to the hearsay rule is such a firmly rooted exception." Because the statement fit within the exception, the court decided that its admission was proper, and upheld the admission.

### A

Hernandez contends that the California Court of Appeal's determination that the

---

**3.** The Sixth Amendment's Confrontation Clause was made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 403–05, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**4.** The Court explained that where evidence does not fall within a firmly rooted exception to the hearsay rule, a presumption arises that the evidence should be excluded; in such cases, "the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

admission of Cota's statement did not violate his Confrontation Clause rights was erroneous. He relies on a line of United States Supreme Court cases dealing with the question whether declarations against penal interest are within a firmly rooted hearsay exception, beginning with *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

In *Lee*, the Court took up Lee's challenge to his conviction based on the Confrontation Clause. Lee was tried jointly for murder with a codefendant in a bench trial, at which neither testified. *Id.* at 535–36, 106 S.Ct. 2056. At trial, the judge admitted a confession by the codefendant, and used it as evidence in finding Lee guilty. *Id.* at 538, 106 S.Ct. 2056. Lee objected and appealed. The Illinois Court of Appeals and Illinois Supreme Court both affirmed. The Supreme Court, however, reversed. The Court began by noting that under *Roberts*, a "presumption of unreliability attaches to co-defendants' confessions." *Id.* at 543, 106 S.Ct. 2056. It then analyzed whether the confession could meet the second prong of *Roberts*, i.e., whether it bore "particularized guarantees of trustworthiness." *Id.*

The Court did not analyze in the text of its opinion whether the evidence could come in under a firmly rooted exception to the hearsay rule. In a footnote the Court stated that it "reject[ed] ... categorization of the hearsay involved in this case as a simple 'declaration against penal interest,'" because "[t]hat concept defines too large a class for meaningful Confrontation Clause analysis." *Id.* at 544 n. 5, 106 S.Ct. 2056. Instead, the Court "decide[d] this case as involving a confession by an accomplice which incriminates a criminal defendant." *Id.* Thus, to the extent that the footnote implied that the category of declarations against penal interest was not a firmly rooted exception to the hearsay rule, it was dicta.[5] *Accord United States v. York*, 933 F.2d 1343, 1363 n. 4 (7th Cir.1991) (concluding that *Lee* did not determine whether the declaration against interest exception to the hearsay rule is firmly rooted, but instead, held only that an accomplice's declarations inculpatory of the defendant are presumptively unreliable).

The dicta in *Lee* left substantial uncertainty as to whether the hearsay exception for declarations against penal interest was indeed firmly rooted. Indeed, the Supreme Court recognized as much in an opinion filed eight years later, *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). There, the Court explicitly refrained from deciding "whether the hearsay exception for declarations against interest is 'firmly rooted' for Confrontation Clause purposes." *Id.* at 605, 114 S.Ct. 2431.[6]

---

5. In dissent, four Justices faced head-on the issue of whether the declaration against penal interest exception is a firmly rooted one. They concluded that the answer was "yes": "The hearsay exception for declarations against interest is firmly established...." *Id.* at 551, 106 S.Ct. 2056 (Blackmun, J., dissenting, joined by Burger, C.J., Powell, J., and Rehnquist, J.).

6. This statement in *Williamson* left the Circuits in flux. In fact, until the Court's decision in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion), the circuits were in discord on whether declarations against penal interest were a firmly rooted exception to the hearsay rule. *Compare Neuman v. Rivers*, 125 F.3d 315, 319–320 (6th Cir.1997) (concluding that penal interest exception is firmly rooted), *United States v. Barone*, 114 F.3d 1284, 1300–02 (1st Cir.1997) (same), and *United States v. York*, 933 F.2d 1343, 1363–64 & n. 5 (7th Cir.1991) (same), *with Earnest v. Dorsey*, 87 F.3d 1123, 1131 n. 6 (10th Cir.1996) (distinguishing an earlier opinion holding that penal interest exception is firmly rooted as inconsis-

The Supreme Court clarified the issue somewhat in its recent decision in *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion). In *Lilly,* the Court was directly presented with the question whether the declaration against penal interest exception to the hearsay rule constitutes a firmly rooted exception. A plurality of the Court then noted that

> [t]he "against penal interest" exception to the hearsay rule—unlike other previously recognized firmly rooted exceptions—is not generally based on the maxim that statements made without a motive to reflect on the legal consequences of one's statement, and in situations that are exceptionally conducive to veracity, lack the dangers of inaccuracy that typically accompany hearsay. The exception, rather, is founded on the broad assumption "that a person is unlikely to fabricate a statement against his own interest at the time it is made."

*Id.* at 126–27, 119 S.Ct. 1887 (citation omitted). With this in mind the plurality explained that, due to the sweeping scope of the label, the category of " 'declaration[s] against penal interest' ... defines too large a class for meaningful Confrontation Clause analysis." *Id.* at 127, 119 S.Ct. 1887 (quoting *Lee,* 476 U.S. at 544 n. 5, 106 S.Ct. 2056). Therefore, the plurality divided the exception into three subcategories,

based on the three principal situations in which declarations against penal interest are offered as evidence in criminal trials: (1) voluntary admissions against the declarant; (2) exculpatory evidence offered by a defendant who claims that the declarant committed, or was involved in, the offense; and (3) evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant. *Id.*

In the third subcategory, which was at issue in *Lilly,* and is at issue here, the plurality concluded that declarations against penal interest "are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence," where the statements are "accomplices' confessions that inculpate a criminal defendant." *Id.* at 134, 119 S.Ct. 1887. This was so, the plurality reasoned, because "when an alleged accomplice testifies, his confession that 'incriminate[s] himself together with defendant ... ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses.' " *Id.* at 131, 119 S.Ct. 1887 (quoting *Crawford v. United States,* 212 U.S. 183, 204, 29 S.Ct. 260, 53 L.Ed. 465 (1909)); *see also id.* at 133, 119 S.Ct. 1887 ("It is clear that our cases consistently have viewed an accomplice's statements

---

tent with *Lee,* but ultimately avoiding the issue).

Indeed, the Second Circuit was internally incoherent. *Compare United States v. Katsougrakis,* 715 F.2d 769, 776 (2d Cir.1983) (concluding that penal interest exception is firmly rooted), *with United States v. Bakhtiar,* 994 F.2d 970, 978 (2d Cir.1993) (declining to reaffirm court's earlier holding in *Katsougrakis* that the penal interest exception is firmly rooted). The Fifth Circuit, too, seemed equivocal. *Compare United States v. Flores,* 985 F.2d 770, 775 (5th Cir.1993) (concluding that penal interest exception is not firmly rooted), *with United*

*States v. Dean,* 59 F.3d 1479, 1493 n. 24 (5th Cir.1995) (recognizing the holding in *Flores,* but noting that "[s]ince we decided *Flores,* many courts have held that [the penal interest exception] is a firmly rooted exception to the hearsay rule").

This court remained above the fray, declining to choose sides in the debate. *See United States v. Nazemian,* 948 F.2d 522, 532 (9th Cir.1991) (stating that "the Supreme Court has not decided whether the declaration against penal interest is such an exception, although four justices have issued an opinion so finding," and declining to decide the issue).

that shift or spread the blame to a criminal defendant as falling outside the realm of those hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.") (internal quotation marks omitted).

B

This case comes before us in the form of a habeas petition seeking relief from state court adjudicated confinement, and the petition was filed after the effective date of AEDPA.

■■ Accordingly, we may only grant Hernandez the relief he seeks if the decision of the California Court of Appeal, the only written decision from the state court system, was "contrary to, or involve[d] an unreasonable application of, clearly established federal law as determined by the Supreme Court...." 28 U.S.C. § 2254(d)(1); *see Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000). As the Supreme Court recently explained, this means that any principle on which Hernandez seeks to rely must be found in "the *holdings,* as opposed to the *dicta,* of [the Supreme] Court's decisions ...." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (emphasis added). Moreover, decisions of that Court are the only ones that can form the basis justifying habeas relief; "lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Id.* at 381, 120 S.Ct. 1495.

■ Hernandez notes that instead of performing the detailed categorical analysis set forth by the plurality in *Lilly,* the California Court of Appeal accepted the category of declarations against penal interest as a firmly rooted exception to the

hearsay rule, and admitted Cota's statement as being within that category.[7] Certainly, this approach is inconsistent with *Lilly*'s rejection of this category as too broad to be considered firmly rooted. But the intricacies of the state court's analysis need not concern us; what matters is whether the *decision* the court reached was contrary to controlling federal law. *See* 28 U.S.C. § 2254(d)(1); *see also Cruz v. Miller,* 255 F.3d 77, 86 (2d Cir.2001) (noting that in habeas proceedings, "we are determining the reasonableness of the state courts' 'decision,' not grading their papers") (citation omitted); *Neal v. Puckett,* 239 F.3d 683, 696 (5th Cir.2001) ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision."); *Hennon v. Cooper,* 109 F.3d 330, 334–35 (7th Cir.1997) (Posner, C.J.) (explaining that scrutinizing state courts' methods of reasoning "would place the federal court in just the kind of tutelary relation to the state courts that [AEDPA was] designed to end").

The Court of Appeal *decided* that Cota's statement, which inculpated himself, and only himself—and indeed, was redacted to remove any reference to Hernandez—fell within a firmly rooted exception to the hearsay rule. We must therefore determine in light of *Roberts,* which set forth the general standards for admissibility of evidence consistent with the Confrontation Clause, and *Lee, Williamson,* and *Lilly,* which worked out these standards in the context of declarations against penal interest, whether this decision was erroneous.

1

■ A state court's decision can be "contrary to" Federal law either 1) if it

---

7. · We note as an initial matter that this omission was wholly understandable, as *Lilly* wasn't decided until two years after the Cali-

fornia Court of Appeal rendered its decision in Hernandez's case.

fails to apply the correct controlling authority, or 2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Tran v. Lindsey,* 212 F.3d 1143, 1148 (9th Cir.2000). Neither of these properly describes the opinion of the California Court of Appeal.

### a

The Court of Appeal applied the correct controlling authority. In determining that Cota's statement fell within a firmly rooted hearsay exception, it relied on *People v. Wilson,* 17 Cal.App.4th 271, 21 Cal.Rptr.2d 420 (1993). That decision quoted the Supreme Court's decision in *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) for the proposition that "[w]hen testimony, although hearsay, has 'sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.'" *Wilson,* 17 Cal.App.4th at 277, 21 Cal.Rptr.2d 420 (quoting *White,* 502 U.S. at 356, 112 S.Ct. 736). That proposition is squarely in accord with *Roberts,* the controlling authority that set forth the ground rules under the Confrontation Clause.

### b

Nor did the Court of Appeal apply controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless, reach a different result. None of the controlling authority dealing with the declaration against penal exception to the hearsay rule is on all fours with this case. The Court in *Lee,* in dicta, indicated that not all of the broad category of declarations against penal interest was within a firmly rooted hearsay exception; four dissenters, however, disagreed. Then in *Williamson,* the Court expressly left the question open— indicating that the entire category could, in fact, be within a firmly rooted exception.

■ *Lilly,* of course, engaged in a closer analysis; it divided the broad category into three, and dealt only with one specific subsection of the third subcategory. The issue as framed by the plurality in *Lilly,* however, was narrow: "whether the accused's Sixth Amendment right ... was violated by admitting into evidence at his trial a nontestifying accomplice's *entire confession* that contained some statements against the accomplice's penal interest *and others that inculpated the accused.*" *Lilly,* 527 U.S. at 120, 119 S.Ct. 1887 (emphasis added).[8] Thus, the plurality held only that

---

**8.** We note that we are unpersuaded by Hernandez's argument that Cota's statement inculpated him, even though the statement only recounted Cota's intent in going to Crawford Market, and did not mention Hernandez. Hernandez contends that the statement inculpated him for purposes of *Lilly;* the statement indirectly spread the blame to Hernandez, he argues, because "it is so clear that they acted together."

We read the Supreme Court's decision in *Williamson,* however, as foreclosing this argument. In that case, the Court limited the declaration against penal interest exception found in Fed.R.Evid. 804(b)(3) to only truly self-inculpatory statements. But it noted that even under this stringent rule, "the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame

or curry favor." *Williamson,* 512 U.S. at 602, 114 S.Ct. 2431. As an example, the court noted that a statement that "when seen with other evidence ... inculpate[s] the defendant directly" would be nonetheless be admissible as self-inculpatory. *Id.* The statement " 'I was robbing the bank on Friday morning,' " the Court noted, when "coupled with someone's testimony that the declarant and the defendant drove off together Friday morning, is evidence that the defendant also participated in the robbery." *Id.* Likewise, Cota's statement that he went to Crawford's Market to steal a car, which inculpated only him and did not mention Hernandez, is properly considered as truly self-inculpatory. The statement does not evince an effort to curry favor or deflect (or share) blame; only the introduction of other, independent evidence at trial demon-

declarations against penal interest "are not within a firmly rooted exception to the hearsay rule" where the statements are "accomplices' confessions that inculpate a criminal defendant." *Id.* at 134, 119 S.Ct. 1887. *Lilly* is thus easily distinguished from this case, where Cota's statement did not inculpate Hernandez, and indeed, had nothing to do with him. *Accord United States v. Petrillo,* 237 F.3d 119, 122 (2d Cir.2000) (concluding that *Lilly* did decide whether accomplices' statements which are redacted so that they do not inculpate the defendant are within a firmly rooted exception).

2

■ We further conclude that the California Court of Appeal's decision did not involve an unreasonable application of Federal law. A state court's decision can involve an "unreasonable application" of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Tran,* 212 F.3d at 1148.

a

Taking the second point first, nothing in *Lilly* makes the California Court of Appeal's decision unreasonable. *Lilly,* of course, dealt only with statements by an accomplice which incriminate the defendant; it did not involve statements like Cota's, which inculpate only the accomplice, and indeed, are sanitized to exclude any reference to the defendant. Moreover, the rationale that renders statements of the kind at issue in *Lilly* not within a firmly rooted exception does not extend to statements of the kind at issue here. The plurality in *Lilly* addressed the subcategory of statements made by an accomplice offered as evidence by the prosecution to establish the guilt of the defendant. It explained that within that subcategory a certain further subset of statements, i.e., statements which attempt to shift or to spread blame by inculpating both the accomplice and the defendant, is inherently untrustworthy. *See Lilly,* 527 U.S. at 131, 119 S.Ct. 1887 (noting that the "third category of hearsay encompasses statements that are inherently unreliable.... Wigmore's treatise still expressly distinguishes accomplices' confessions that inculpate themselves *and the accused* as beyond a proper understanding of the against—penal-interest exception because an accomplice often has a considerable interest in 'confessing and betraying his cocriminals' ") (emphasis added); *id.* ("[W]e have over the years 'spoken with one voice in declaring presumptively unreliable accomplices' confessions *that incriminate defendants.'* ") (emphasis added); *see also Lee,* 476 U.S. at 541, 106 S.Ct. 2056 ("[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination ...."); *id.* (" 'Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.' "); *id.* at 545, 106 S.Ct. 2056 ("[A] codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry fa-

strating that Hernandez, in fact, accompanied Cota to Crawford's Market made the statement relevant to Hernandez.

vor, avenge himself, or divert attention to another.")

These concerns are not, however, raised when the statement of the accused inculpates *only* the accused himself, and indeed, does not even mention the defendant. In such cases the accused has no motive to lie; he is not trying to exonerate himself, or to shift or to spread blame. He is simply talking about himself. Such statements, which are purely against the accomplice's penal interests, are thus qualitatively different from statements which, while at least partially against an accomplice's penal interest, also inculpate the defendant. *See* C. McCormick, Law of Evidence § 256, at 552–553 (1954) (observing that, in "giving meaning to the declaration against interest" exception, "admit[ting] the disserving parts of the declaration, and exclud[ing] the self-serving parts ... seems the most realistic method of adjusting admissibility to trustworthiness ....") (footnotes omitted).

b

Nor do we believe that the Court of Appeal's decision applied a governing rule to a new set of facts in a way that was objectively unreasonable. As the Court of Appeal recognized, the governing law in this case is *Roberts* and its progeny, which teach that for Confrontation Clause purposes, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

In determining whether the Court of Appeal's decision was reasonable, we must remember that there was no majority opinion in *Lilly*; rather, *Lilly* produced a

plurality opinion, a concurring opinion, and three opinions concurring in the judgement. Indeed, as one treatise notes, "the entire Court agreed only on one point: that admission of the confession" of the accomplice, which specifically inculpated the defendant, "violated the defendant's Confrontation Clause rights; it was unable to forge a majority opinion either on the basis of that finding, or on the appropriate remedy for the violation." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 802.05[5][a][ii], at 802–27 (Joseph M. McLaughlin ed., 2d ed.2001). As we noted above, the Court in *Williamson*—the last Supreme Court decision on the subject before *Lilly*—explicitly left open the question whether declarations against penal interest fall within a firmly rooted exception. *Williamson*, 512 U.S. at 604, 114 S.Ct. 2431. Thus, before *Lilly*, the Circuits were split on the question, and "the weight of authority supported the conclusion that the exception to the hearsay rule for a statement against penal interest is a firmly rooted exception." Weinstein, *supra*, § 802.05[5][a][ii], at 802–29 (collecting cases); *see also supra* note 6. Accordingly, we cannot say that the California Court of Appeal's decision in this case involved an unreasonable application of Federal law; indeed, the decision seems quite reasonable.

C

In sum, we conclude that the California Court of Appeal's decision, upholding the admission of Cota's self-inculpatory statement as falling within a firmly rooted exception to the hearsay rule neither was "contrary to" nor "involved an unreasonable application of" controlling Federal law. 28 U.S.C. § 2254(d)(1).[9] Thus, the

9. Because we conclude that the California Court of Appeal's decision was not "contrary to," and did not "involve[ ] an unreasonable application of" Federal law "as determined by the Supreme Court," we need not determine whether the rule in *Lilly*, which was

decided in 1999, was "clearly established" by the time Hernandez's conviction became final in 1997. 28 U.S.C. § 2254(d)(1). *See Andrade v. Attorney Gen. of the State of California*, 270 F.3d 743, 753 (9th Cir.2001) (explaining that when analyzing a habeas peti-

district court was correct to deny his habeas petition.

## III

We further note that, even if the California Court of Appeal's decision affirming the admission of Cota's statement against Hernandez had been erroneous, Hernandez is not entitled to habeas relief.

A Confrontation Clause violation is subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681–84, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir.2000). Under *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), habeas relief is proper only if any error by the state courts "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710. That is, Hernandez is entitled to habeas relief only if he can show that any constitutional violation "resulted in 'actual prejudice.'" *Id.*

Hernandez argues that Cota's statement was not harmless because felony-murder, of which Hernandez was convicted in Count II, depended on a finding of an intent to steal on Hernandez's part prior to the killing—the issue on which the court's error prejudiced petitioner. The argument, however, is unpersuasive. The trial judge correctly instructed the jury that "[t]he prosecution must prove beyond a reasonable doubt that the intent to commit the felony crime of robbery arose *before or during* the commission of the acts that

resulted in the death of the victim." *See People v. Lewis*, 25 Cal.4th 610, 106 Cal. Rptr.2d 629, 22 P.3d 392, 413 (2001) (To establish felony-murder, "the prosecution must establish that the defendant, either before or during the commission of the acts that caused in the victim's death, had the specific intent to commit one of the listed felonies."). There was ample evidence, apart from Cota's statement, that Hernandez had such an intent. Hernandez and Cota were seen riding through the parking lot of Crawford's Market on a bicycle in a suspicious manner, zigzagging through the lot as if looking for something to steal. Moreover, Hernandez ordered Silva and Gonzalez out of the car, ordered Silva to kneel and shot and killed him, and then shot Gonzalez. They then got into the car and drove it away. These pieces of evidence all indicate that Hernandez had the requisite intent to steal the car at least during, if not before, the murders; they make it improbable that Hernandez shot Silva with no thought of taking the car, and then drove off in it with Cota as an afterthought. *See Turner v. Marshall*, 63 F.3d 807, 816 (9th Cir.1995) ("Although intent to steal is a required element [of robbery under California law], the jury could infer intent from the evidence that [the defendant] had taken the property of another."), *overruled on other grounds*, *Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999) (en banc); *People v. Turner*, 50 Cal.3d 668, 268 Cal.Rptr. 706, 789 P.2d 887, 895 (1990) (In Bank) ("[W]hen one kills another and takes substantial property from the victim, it is ordinarily reasonable to presume the killing was for purposes of robbery.").

tion under AEDPA, "we must first consider whether the state court erred; only after we have made that determination may we then consider whether any error involved an unreasonable application of controlling law within the meaning of § 2254(d)").

## IV

For the foregoing reasons, the decision of the district court denying Hernandez's petition for a writ of habeas corpus is .

**AFFIRMED.**