**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDY BERNARD TAYLOR,
          *Petitioner-Appellant,*

v.

GAIL LEWIS, Warden,
          *Respondent-Appellee.*

No. 04-17517

D.C. No.
CV-02-05655-REC

OPINION

Appeal from the United States District Court
for the Eastern District of California
Robert E. Coyle, Senior Judge, Presiding

Argued and Submitted
June 13, 2006—San Francisco, California

Filed August 15, 2006

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge O'Scannlain;
Concurrence by Judge Thomas

**COUNSEL**

Kevin G. Little, Fresno, California, argued the cause for the petitioner-appellant. Samya Burney, Fresno, California, was on the brief.

Justain P. Riley, Deputy Attorney General, Sacramento, California, argued the cause for the respondent-appellee, which filed no brief. Respondent-appellee provided the notification required by Circuit Rule 31-2.3. The court granted permission to argue pursuant to Fed. R. App. P. 31(c).

**OPINION**

O'SCANNLAIN, Circuit Judge:

In this habeas case we review whether it was an unreasonable application of federal constitutional law for a California state court to decide that a "three strikes" sentence of 25 years to life for possessing 0.036 grams of cocaine did not violate the Eighth Amendment.

I

A

On the afternoon of August 30, 1998, police officers in Bakersfield, California, observed Andy Bernard Taylor fail to

obey a stop sign while riding his bicycle. One of the officers recognized Taylor. The police stopped him and, with Taylor's consent, performed a search of his person. They found a glass pipe used for smoking cocaine base and other paraphernalia. Underneath the sweatband of Taylor's baseball cap, the officers also found small amounts of a substance they suspected to be rock cocaine. Subsequent testing confirmed that the substance contained 36 milligrams (0.036 grams) of cocaine base.

## B

The State of California charged Taylor with felony possession of cocaine, in violation of California Health & Safety Code § 11350(a), and misdemeanor possession of narcotics paraphernalia, in violation of Health & Safety Code § 11364.

The State also alleged that Taylor had been convicted of two prior felonies. The first was a May 23, 1980, conviction for voluntary manslaughter, in violation of California Penal Code § 192.1; the second was a September 24, 1986, conviction for robbery with a firearm enhancement, in violation of Penal Code §§ 211 and 12022.5.

Taylor plead not guilty to the charges and denied all allegations. He filed a motion to suppress the evidence obtained from the search of his person, which the district court denied.

Taylor's jury trial on the cocaine and paraphernalia possession charges commenced on January 4, 1999.[1] Taylor claimed that he made a full stop at the stop sign. He further claimed that the baseball cap in which the rock cocaine was found belonged to his girlfriend, and he denied knowledge that the rock cocaine was there. He admitted ownership of the drug paraphernalia.

---

[1]Taylor waived his right to a jury trial on the prior-conviction allegations. He then admitted prior convictions for voluntary manslaughter, felony automobile theft, armed robbery, and felony burglary. The trial court found the prior-conviction allegations to be true.

Taylor also admitted to having used crack cocaine habitually since 1986. He testified that he would buy cocaine daily in small quantities and would smoke it shortly thereafter. One of the officers who arrested Taylor provided rebuttal testimony that it would have been uncharacteristic for a crack user (*i.e.*, Taylor's girlfriend) to leave her drugs in the custody of another person.

The jury found Taylor guilty on both counts. At the subsequent sentencing hearing, the court declined to dismiss any of the prior-conviction allegations. On the felony possession count, the court sentenced Taylor to a term of imprisonment of 25 years to life under California's three strikes law. It also sentenced Taylor to a concurrent six-month term for the misdemeanor count of possessing drug paraphernalia.

C

Taylor directly appealed the convictions. On August 29, 2000, the California Court of Appeal, Fifth Appellate District, considered Taylor's cruel-and-unusual-punishment argument. The court stated that Taylor's recidivism, not just his current offense, inspired the length of his prison term. It further remarked that Taylor's "offense and criminal history are, in combination, as aggravated as many third strike offenders coming before this court." The court therefore affirmed the trial court's judgment. The California Supreme Court denied review on November 1, 2000.

On January 19, 2001, Taylor filed a *pro se* petition for writ of habeas corpus in the Kern County Superior Court. The court denied the petition and subsequently denied reconsideration.

Taylor filed the same *pro se* petition for writ of habeas corpus in the California Court of Appeal on May 18, 2001. The court denied the petition without opinion. Taylor then filed

the petition in the California Supreme Court, which denied relief without opinion on April 27, 2002.

D

On June 3, 2002, Taylor filed this petition for writ of habeas corpus in the United States District Court for the Eastern District of California. A magistrate judge subsequently denied Taylor's motion for appointment of counsel for purposes of the federal habeas proceedings.

On August 27, 2004, Magistrate Judge Lawrence J. O'Neill issued his Findings and Recommendation Regarding Petition for Writ of Habeas Corpus and recommended the denial of all claims. District Judge Robert E. Coyle adopted the magistrate judge's recommendation and denied the habeas petition.

Still acting *pro se*, Taylor timely mailed his notice of appeal. Judge Coyle denied issuance of a certificate of appealability ("COA").

On December 10, 2004, Taylor filed a request for COA with this court. We granted the COA with respect to two issues.[2] We also ordered appointment of counsel on appeal.

II

A

Taylor argues that the state court contradicted and unreasonably applied federal law when it held that his three strikes sentence of 25 years to life in prison did not violate the U.S.

_____

[2]Taylor's first contention is that the state court's decision to affirm his conviction was an objectively unreasonable application of federal law because the use of CALJIC 2.21.2 violated his due process rights. In a concurrently filed memorandum disposition, we affirm the district court's denial of Taylor's petition as to this issue.

Constitution's prohibition of cruel and unusual punishment.[3] Specifically, he contends that the "harsh penalty" he received for a "minor offense" indicates gross disproportionality in violation of the Eighth Amendment. Taylor considers his third felony to have been a nonviolent, passive, and victimless crime. In addition, Taylor contends that the sentence imposed is not justified by his prior offenses because our focus must be on the offense that triggered the harsh sentence.[4]

---

[3]*See Rios v. Garcia*, 390 F.3d 1082, 1084-85 (9th Cir. 2004) (describing the operation of California's three strikes law).

[4]We review de novo the district court's denial of Taylor's petition for writ of habeas corpus. *Leavitt v. Arave*, 371 F.3d 663, 668 (9th Cir. 2004). We apply the standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") to the California Court of Appeal's reasoned decision on direct appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Under AEDPA, we will grant habeas relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 405-09 (2000).

Under the "contrary to" clause, this court may grant habeas relief if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law. *Williams*, 529 U.S. at 405-06. A state court also violates clearly established federal law if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 406.

A state court's decision involves an "unreasonable application" of federal law if it (1) "correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable," or (2) "extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002) (citation omitted). "[T]he most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410.

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings . . . of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

B

**[1]** The Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment. *See Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).[5] The principle "does not require strict proportionality between crime and sentence," but rather "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Accordingly, successful challenges based on proportionality are "exceedingly rare," and deference is due legislative judgments on such matters. *Solem*, 463 U.S. at 289-90.

**[2]** In assessing the compliance of a non-capital sentence with the proportionality principle, we consider "objective factors" to the extent possible. *Id.* at 290. Foremost among such factors are the severity of the penalty imposed and the gravity of the offense.[6] Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime. *Id.* at 292-93.[7]

---

[5]Justice Kennedy's concurring opinion, joined by Justices O'Connor and Souter, is considered controlling. *See United States v. Bland*, 961 F.2d 123, 128-29 (9th Cir. 1992).

[6]The Supreme Court has assured us that "courts are competent to judge the gravity of an offense, at least on a relative scale," because "courts traditionally have made these judgments—just as legislatures must make them in the first instance." *Solem*, 463 U.S. at 292. On the other hand, the Court has "recognize[d] that we lack clear objective standards to distinguish between sentences for different terms of years." *Harmelin*, 501 U.S. at 1001.

[7]The Supreme Court has also suggested that we compare the sentences imposed on other criminals in the same jurisdiction, and that we compare the sentences imposed for commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 298-300. However, our consideration of comparative factors may be unnecessary; the *Solem* Court "did not announce a rigid three-part test." *See Harmelin*, 501 U.S. at 1004 (Kennedy, J., con-

1

**[3]** We first examine the severity of the penalty imposed on Taylor. A term of imprisonment of 25 years to life is surely a harsh penalty. Of course, Taylor is eligible for parole after 25 years. Parole is " 'an established variation on imprisonment of convicted criminals' . . . [and thus] a proper assessment of [a state's] treatment of [a habeas petitioner] could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life." *Rummel*, 445 U.S. at 280-81 (citation omitted).

**[4]** Accordingly, Taylor's sentence is considerably less severe than the one invalidated in *Solem*, in which the petitioner had been sentenced to life imprisonment without the possibility of parole. *See* 463 U.S. at 297. True, it is more severe than the sentence of 12 years to life upheld in *Rummel*. 445 U.S. at 267. But the Supreme Court has more recently denied habeas relief in cases involving three strikes sentences identical to Taylor's. *See Lockyer v. Andrade*, 538 U.S. 63, 68 (2003); *Ewing v. California*, 538 U.S. 11, 19-20 (2003). We have done likewise. *See Rios*, 390 F.3d at 1083, 1084-86.

2

Next we consider the gravity of the offense Taylor committed: the possession of cocaine after having committed at least two prior serious or violent felonies.

---

curring). Rather, "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1004-05; *see also Rummel v. Estelle*, 445 U.S. 263, 282 (1980) ("Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.").

a

**[5]** With respect to the present "triggering" offense, the available Supreme Court cases involved property offenses. In *Rummel*, the petitioner obtained $120.75 by false pretenses. 445 U.S. at 266. In *Ewing*, the petitioner committed grand theft by shoplifting three golf clubs worth $399 each. 538 U.S. at 17-18. And in *Andrade*, the petitioner committed a petty theft of $153.54 worth of videotapes from a retail store. 538 U.S. at 66. As noted, the Court upheld the sentence in each of these cases.

Taylor thinks any offense having an immediate victim is more serious than a drug-possession offense. Taylor's brief is saturated with words like "minor" and "petty," and he emphasizes the purportedly "victimless" nature of his present crime. But it is not obvious to us that Andrade's depriving a K-Mart of $153.54 worth of videotapes is graver than Taylor's possession of 36 milligrams of cocaine. Neither was it obvious to the State of California, which treats possession of cocaine base as a felony, *see* CAL. HEALTH & SAFETY CODE §§ 11350 and 11356, while petty theft offenses like those considered in *Andrade* can be felonies only when the culprit has a prior offense, *see* CAL. PENAL CODE § 666.

**[6]** More fundamentally, we think that the State was entitled to the view that "[*p*]*ossession*, *use*, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.' " *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring) (quoting *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989) (emphasis added)). It could, consistent with the Eighth Amendment, agree with Justice Kennedy's view:

> Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in

physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture. . . . Studies bear out these possibilities and demonstrate a direct nexus between illegal drugs and crimes of violence.

*Id.* at 1002-03; *see also Andrade*, 538 U.S. at 67 (" 'The defendant further stated he went into the K-Mart Store to steal videos. He took four of them to sell so he could buy heroin.' " (quoting the presentence report)).

**[7]** Accordingly, it was not unreasonable for the California Court of Appeal to consider Taylor's triggering offense at least as serious as the property offenses involved in *Rummel*, *Ewing*, and *Andrade*, where the Supreme Court upheld recidivist sentences of 12 or 25 years to life.

b

**[8]** Although the Supreme Court has said that we "must focus on the principal felony—the felony that triggers the life sentence," *Solem*, 463 U.S. at 297 n.21, it has made clear that we must also "place on the scales" a petitioner's "long history of felony recidivism," *Ewing*, 538 U.S. at 29.

Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the "triggering" offense: "[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law."

*Id.* (quoting *Rummel*, 445 U.S. at 276).[8] Thus, Taylor "incorrectly frames the issue," *id.*; the gravity of his offense was not merely possessing one hit of crack cocaine. "Rather, [he] was convicted of [felony possession of a controlled substance] after previously having been convicted of at least two 'violent' or 'serious' felonies." *Id.* The State of California legislated against Taylor's recidivism, not merely his narcotics possession. *See id.* at 29 (concluding that the petitioner's "sentence [was] justified by the State's public-safety interest in incapacitating and deterring recidivist felons").[9]

Again, we compare the relevant Supreme Court cases. In *Rummel*, the petitioner's three felonies included the fraudulent use of a credit card to obtain $80 worth of goods or services; passing a forged check in the amount of $28.36; and obtaining $120.75 by false pretenses. 445 U.S. at 265-66. In *Ewing*, the petitioner's prior offenses were numerous, including thefts, burglary, and possession of drug paraphernalia. Most damning was a 1993 crime spree, during which Ewing committed three residential burglaries and one first-degree robbery in which he threatened the victim with a knife. *See* 538 U.S. at 18-19. And in *Andrade*, the petitioner's prior offenses included two counts of misdemeanor theft, three counts of first-degree residential burglary, two counts of transportation of marijuana, and escape from federal prison. 538 U.S. at 66-67.

**[9]** In addition, we note the *Solem* Court's suggestion that "nonviolent crimes are less serious than crimes marked by

---

[8]We must also note that the triggering offense in *Solem*, where the sentence was struck down, was strikingly similar to those in *Rummel*, *Andrade*, and *Ewing*, where the sentences were upheld.

[9]Ewing received 25 years to life for having committed an act that, outside of the three strikes context, would have garnered no more than one year in prison. *See* CAL. PENAL CODE § 489. Thus, it avails Taylor nothing that he was given 25 years to life for a crime ordinarily deserving no more than three years. *See People v. York*, 60 Cal. App. 4th 1499, 1506 n.9, 71 Cal. Rptr. 2d 303, 308 n.9 (1998) (citing CAL. PENAL CODE § 18).

violence or the threat of violence." 463 U.S. at 292-93. Indeed, the presence of violence on a petitioner's record seems an extremely important focal point for proportionality review. *See Reyes v. Brown*, 399 F.3d 964, 965-66 & n.7 (9th Cir. 2005) (remanding because a prior robbery conviction "may have been non-violent"); *Rios*, 390 F.3d at 1086 (emphasizing that the petitioner's present offense and prior offenses involved violence).

**[10]** In light of the foregoing, we are persuaded that Taylor's prior criminal offenses entail considerably more gravity than those the Supreme Court has previously considered. In addition to Taylor's present conviction for felony possession of a controlled substance, his criminal record is lengthy and includes the following felonies: second-degree burglary; robbery with the use of a firearm; vehicle theft; and voluntary manslaughter with a weapon-use enhancement.[10] His record of misdemeanor offenses includes possession of drug paraphernalia; possession of a dangerous weapon; four counts of driving under the influence of alcohol; battery; false identification to a peace officer; theft; and carrying a concealed weapon. Taylor has juvenile convictions for burglary, assault, and petty theft.

The record does not disclose the full details of Taylor's prior convictions. However, we are satisfied that it discloses well enough, and thus a remand is unnecessary. *Cf. Reyes*, 399 F.3d at 969-70. Taylor's 1980 felony conviction for voluntary manslaughter resulted from his stabbing and killing the victim during a fight. His other "strike," a 1986 felony conviction for robbery, arose when Taylor and accomplices entered a business, threatened the clerk with a firearm,

---

[10]Robbery is defined under California law as a "violent felony" and as a "serious felony." C*AL.* P*ENAL* C*ODE* §§ 667.5(c)(9) and 1192.7(c)(19). Voluntary manslaughter is also defined as a "violent felony" and as a "serious felony." *Id.* §§ 667.5(c)(1) and 1192.7(c)(1). Such status indicates a "strike" for purposes of the recidivism statute. *Id.* § 667(d).

relieved the business of some of its merchandise, and stole a van.

**[11]** Taylor's history of recidivism, marked by violence and the intentional taking of human life and spanning some 30 years, is a great deal more severe than the criminal records considered in *Rummel* and *Andrade*, and probably even more severe than in *Ewing*.[11] Most critical, though, is that Taylor's record is undoubtedly graver than that considered in *Solem*, where the Supreme Court invalidated a recidivist sentence. The *Solem* petitioner had committed various property offenses and three times had driven under the influence of alcohol. The Court noted that the petitioner's offenses "were all nonviolent, none was a crime against a person, and alcohol was a contributing factor in each case." 463 U.S. at 280. Indeed, the "record involve[d] no instance of violence of any kind." *Id.* at 297 n.22; *see also Ramirez v. Castro*, 365 F.3d 755, 768-69 (9th Cir. 2004) (invalidating a three strikes sentence because, among other things, the petitioner's total criminal record included no violence or use of weapons). The same cannot be said of Taylor's.

In addition, the record indicates that Taylor has served three prior prison terms; that he was on misdemeanor probation when he committed the present felony offense; and that he previously violated a misdemeanor probation. *See Ewing*, 538 U.S. at 12 (noting that the petitioner "committed most of his crimes while on probation or parole"). As such, "[o]ne in [Taylor's] position has been both graphically informed of the consequences of lawlessness and given an opportunity to reform, all to no avail." *Rummel*, 445 U.S. at 278; *see also*

---

[11]Taylor argues that the state court's decision was unreasonable because it relied on his criminal history without considering the remoteness or dissimilarity of his prior offenses. But both *Ewing* and *Andrade* presented a similarly diverse array of prior offenses over lengthy periods of time, and in neither case did the Supreme Court mention—much less emphasize—the importance of those factors.

*Ramirez*, 365 F.3d at 769 (noting that the petitioner's prior incarceration included only a single, one-year jail sentence).

**[12]** In sum, Taylor's criminal history weighs heavily in favor of the reasonableness of the Court of Appeal's application of clearly established federal law.

### C

**[13]** In light of the foregoing discussion, we apply AEDPA's standards to the present case. Taylor's only viable argument is that the California Court of Appeal's decision was an unreasonable application of the Supreme Court's proportionality standard. *See* 28 U.S.C. § 2254(d)(1). But in light of *Rummel, Ewing*, and *Andrade*, where the Supreme Court upheld lengthy recidivist sentences, we are satisfied that the state court was not required to find a violation of the Eighth Amendment because: (1) Taylor will be eligible for parole after 25 years; (2) his triggering offense was, at least, not obviously less serious than a property offense such as felony grand theft; and (3) his prior offenses involved violence and crimes against a person, and he has served multiple prior prison terms.

Because Taylor raises no inference of gross disproportionality, we need go no further. *See Ewing*, 538 U.S. at 30-31.

### III

The state court's decision was not an objectively unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. The district court's judgment is therefore

**AFFIRMED**.

THOMAS, Circuit Judge, concurring:

Because I believe that the state court decision was not an objectively unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, I concur in the judgment.