**Todd EVANS, Petitioner—Appellant,**

v.

**Michael BUDGE, Respondent—Appellee.**

No. 05–17362.

United States Court of Appeals,
Ninth Circuit.

Argued & Submitted July 26, 2006.

Filed Sept. 8, 2006.

David Z. Chesnoff, Esq., Richard A. Schonfeld, Goodman & Chesnoff, Las Vegas, NV, for Petitioner–Appellant.

Erik A. Levin, Office of the Nevada Attorney General, Carson City, NV, for Respondent–Appellee.

Before: HUG, KLEINFELD, and PAEZ, Circuit Judges.

## MEMORANDUM *

Todd Evans ("Evans") was convicted in Nevada's Second Judicial District Court in 1995 of First Degree Murder, False Imprisonment, First Degree Kidnaping, and Battery with a Deadly Weapon. Although the State had filed a notice of intent to seek the death penalty, Evans was sentenced to three life terms without the possibility of parole, all sentences to be served consecutively. Evans filed a timely direct appeal. The Nevada Supreme Court affirmed his convictions. Thereafter, Evans filed a state post-conviction petition for writ of habeas corpus, raising some twenty-two claims of ineffective assistance of counsel. Following an evidentiary hearing, the state court denied relief because, while Evans' trial counsel may have been ineffective, Evans had suffered no prejudice. The Nevada Supreme Court again affirmed.

Evans next filed a federal habeas petition pursuant to 28 U.S.C. § 2254. Consistent with the substantial deference required by the Antiterrorism and Effective

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), the district court denied relief. The court then issued a certificate of appealability for one, narrow issue: whether the failure of Evans' trial counsel, John Ohlson ("Ohlson"), to conduct a pre-trial interview of a key prosecution witness, Larry Hall ("Hall"), constituted prejudicial ineffectiveness of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is the sole issue before us. While concerned about Ohlson's failure to interview Hall, we are constrained by the deference owed under AEDPA and find no basis for habeas relief.

We have jurisdiction pursuant to 28 U.S.C. § 2253. Evans filed his habeas petition after April 24, 1996. Accordingly, AEDPA governs his case. We review the district court's decision to deny Evans' habeas petition de novo. *Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir.2002). De novo review involves analyzing the last reasoned state court opinion-here, issued by the Nevada Supreme Court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Under AEDPA,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision [1] that was contrary to,[2] or involved an unreasonable application of,[3] clearly established Federal law, as determined by the Supreme Court of the United States; [4] or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5]

1. We analyze the state court's decision, not its reasoning. *See Sims v. Rowland*, 414 F.3d 1148, 1152 n. 2 (9th Cir.2005).

2. Decisions are "contrary to" established Supreme Court precedent only if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

3. *See Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." (citations omitted)). A state court's decision involves an "unreasonable application" of federal law if it (1) "correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable," or (2) "extends or fails to extend a clearly established legal principle to a new context in a way that is objec-tively unreasonable." *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir.2002) (citation omitted).

4. The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings ... of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412, 120 S.Ct. 1495.

5. Subsection (d)(2) pertains to an "intrinsic review" of the state court's fact-finding process, i.e., "where petitioner challenges the state court's findings based entirely on the state record." *Taylor v. Maddox*, 366 F.3d 992 (9th Cir.2004) (citations omitted). *Taylor* explained that under § 2254(d)(2):

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

28 U.S.C. § 2254(d). This standard is "highly deferential" and requires "state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (internal quotation marks omitted).

Our inquiry is guided by *Strickland.* 466 U.S. at 687–98, 104 S.Ct. 2052. To prevail on his claim of ineffective assistance of counsel, Evans must demonstrate that his counsel's representation was deficient—that it "fell below an objective standard of reasonableness"—and that he was prejudiced. *Id.* at 688, 692, 104 S.Ct. 2052. This is a heavy burden. Evans faces a strong presumption under *Strickland* that Ohlson's failure to interview Hall was sound trial strategy, or falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052. Evans argues that it does not. He points to evidence that Hall subjectively believed he was safe from prosecution so long as Evans was convicted, arguing that Hall would have been impeached had Ohlson discovered this belief.

We can identify from the record no persuasive reason why a pre-trial interview of Hall could not have been performed. No testimony suggests that Ohlson had insufficient time or resources, or that Hall had refused. Ohlson simply assumed that an interview would be pointless. Nevertheless, the Nevada Supreme Court declined to find Ohlson's conduct unreasonable. It reasoned that Ohlson *had* "investigate[d] Hall prior to trial using a number of means that did not require an interview." We need not decide whether Ohlson's failure to interview Hall constituted ineffective assistance of counsel because Evans fails to establish that he suffered any prejudice.

*Id.* at 999–1000 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).

Under *Strickland,* to establish prejudice, Evans must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," or confidence in the outcome undermined. 466 U.S. at 694, 104 S.Ct. 2052. This is not reasonably probable. *Id.* "It is not enough for [Evans] to show that [his counsel's failure to interview Hall] had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052. "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.*

Here, the Nevada Supreme Court found that "independent evidence corroborated the testimony of Hall and did not support [Evans'] version of events." It also joined in the Nevada district court's "difficulty accepting that Hall would have revealed his belief regarding immunity [to Ohlson] given Hall's testimony at trial that he was not promised anything in exchange for his testimony and his admission at trial that he was properly subject to prosecution for the crimes against the victim," and it concluded that Evans had "failed to show that the court's assessment of Hall was incorrect." We must presume these factual findings to be correct. *See* 28 U.S.C. § 2254(e)(1). The record also supports them.

Glenn Rasco's version of events on the night of the murder confirms Evans' involvement and corroborates much of Hall's testimony. Stacy Higgins, Evans' girlfriend at the time, told the police that she had observed Evans "beating the hell" out of the victim on the evening of the murder, and that Evans had been in possession of a .45 caliber gun at the time. She later

recanted, testifying on direct examination that Evans had merely "hit" the victim, not beat him. But either way, Evans' defense depended on proving that he was not present for the beating/killing; Higgins' testimony contradicted that theory.

Moreover, regardless of what the jury was told about Hall's subjective beliefs, it is probable that Hall's testimony would not have been significantly discredited. Hall testified under oath. He appeared at trial without counsel. As a result of his testimony, he risked being charged as an accomplice, an aider and abettor, even a murderer. Hall testified to his desire to do the right thing, no matter the outcome. He testified that he had received no promises from the State, and that he recognized that he could be prosecuted based on his testimony. Both the prosecuting attorney and the D.A.'s investigator testified at the evidentiary hearing that no deal had been struck, proposed, or even discussed with Hall in exchange for his testimony. Believing him already to be dead, Hall admitted to shooting the victim in the head. Upon learning (on the stand) that his shot had been the proximate and an actual cause of the victim's death, Hall neither stopped testifying nor asked for a lawyer. The jury witnessed this testimony and heard that Hall, not Evans, had fired the fatal shot. That fact *reinforced* the defense's theory of the crime.

Certainly, Hall's testimony might have been more easily impeached had it brought out his belief that he faced a murder charge if Evans was acquitted. But the deference owed to the Nevada Supreme Court under AEDPA supercedes this possibility. Presuming the Nevada Supreme Court's factual findings to be correct, as we must, we cannot conclude to a reasonable probability that Ohlson's failure to interview Hall changed the outcome of Evans' trial. Accordingly, because Evans suffered no prejudice, the district court did not err in denying Evans habeas relief under 28 U.S.C. § 2254(d).

AFFIRMED.