**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SANTOS L. REYES,
                    *Petitioner-Appellant,*

v.

JILL BROWN,* Warden,
                    *Respondent-Appellee.*

No. 00-57130

D.C. No.
CV-00-00608-VAP

OPINION

Appeal from the United States District Court
for the Central District of California,
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
March 7, 2002—Pasadena, California
Submission Withdrawn April 2, 2002
Resubmitted April 17, 2003

Filed March 4, 2005**

Before: Harry Pregerson, Raymond C. Fisher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Pregerson;
Dissent by Judge Tallman

---

*Jill Brown is substituted for J.S. Woodford, her predecessor as Warden of San Quentin State Prison. *See* Fed. R. App. P. 43(c)(2).

**This case was originally the subject of a memorandum disposition filed December 29, 2003. *See Reyes v. Woodford*, 83 Fed. Appx. 985 (9th Cir. 2003). On January 12, 2004, Reyes filed a petition for panel rehearing and rehearing en banc. In an order filed contemporaneously with this opinion, we grant the petition for panel rehearing; withdraw the December 29, 2003, memorandum disposition; and deny the petition for rehearing en banc as moot.

## COUNSEL

Gretchen Fusilier, Carlsbad, California, for the petitioner-appellant.

David Delgado-Rucci, Deputy Attorney General, San Diego, California, for the respondent-appellee.

## OPINION

PREGERSON, Circuit Judge:

California state prisoner Santos L. Reyes brought this 28 U.S.C. § 2254 habeas action challenging his sentence under California's "Three Strikes" law. Reyes was convicted of perjury for making misrepresentations on a California Department of Motor Vehicles ("DMV") driver's license application. The perjury conviction was Reyes' third strike. He was sentenced to twenty-six years to life. Reyes contends that his punishment violates the Eighth Amendment's prohibition on cruel and unusual punishment. The district court denied Reyes' habeas petition. Because we conclude that the facts necessary to evaluate Reyes' petition were not sufficiently developed before the district court — and, therefore, are not sufficiently developed in the record before us — we vacate the district court's denial of Reyes' petition and remand to the district court for further proceedings.

## I.

On September 18, 1997, Reyes entered the DMV on Waterman Avenue in San Bernardino, California. He purportedly filled out an application for a driver's license under the name of his cousin, Miguel Soto, who purportedly knew how to drive but not how to read. Reyes signed the application, which purportedly stated that the information was being provided under penalty of perjury.[1] After Reyes signed the application,

---

[1] The parties dispute whether the application Reyes signed was in English or Spanish and whether it stated that the information being provided was under penalty of perjury. For example, the State maintains that Reyes "filled out an English language application . . . . which stated the information was being provided under penalty of perjury." *See* Appellee's Br. at 4-5, *available at* 2001 WL 34355184. In contrast, Reyes maintains that the application "was in Spanish," that he "did not know that he was signing under penalty of perjury," that he "did not know what 'perjury' meant," and that "nothing on" the Spanish application says " 'I have read and understood the above.' " *See* Appellant's Opening Br. at 5-6, 8, *available at* 2001 WL 34355185. We need not resolve this dispute because it is not germane to our resolution of the instant appeal.

DMV employee Debra Alexander gave Reyes two copies of the written driver's license test. Alexander suspected that Reyes was cheating on the exam by using a "crib sheet." She confiscated the two tests from Reyes and began filling out paperwork related to Reyes' alleged cheating. Meanwhile, Reyes left the DMV building.

Alexander contacted California Highway Patrol Officer José Lopez, who was stationed at the DMV. Officer Lopez followed Reyes, who was walking away. After catching up with Reyes, Officer Lopez patted-down Reyes and handcuffed him. Reyes cooperated with Officer Lopez and voluntarily admitted that he had attempted to take the written driver's license test for Soto. The encounter was without violence.

On March 2, 1998, Reyes was arraigned on an Amended Information, charging him with one count of perjury in violation of California Penal Code § 118. Reyes qualified for the Three Strikes enhancement because of two prior convictions: one as a juvenile in 1981 for residential burglary in violation of California Penal Code § 459; and one in 1987 for armed robbery in violation of California Penal Code § 211.

The State offered Reyes a deal of four years imprisonment in exchange for a guilty plea to the perjury charge, but Reyes rejected the plea deal and exercised his constitutional right to a jury trial. On March 5, 1998, a jury convicted Reyes of the perjury charge and found the Three Strikes special allegations true. On April 2, 1998, the trial court sentenced Reyes to an indeterminate term of twenty-six years to life.

Reyes appealed the judgment, claiming, among other things, that his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment. On June 9, 1999, the California Court of Appeal affirmed Reyes' conviction and sentence. On September 1, 1999, the California Supreme Court denied Reyes' petition for review.

On July 26, 2000, Reyes filed a 28 U.S.C. § 2254 habeas petition in the United States District Court for the Central District of California. On September 21, 2000, Magistrate Judge Charles F. Eick issued a report and recommendation urging that Reyes' petition be dismissed with prejudice. On October 12, 2000, District Judge Virginia Phillips adopted the report and recommendation and dismissed Reyes' petition.

On October 31, 2000, Reyes timely filed a notice of appeal and a request for certificate of appealability. On May 2, 2001, we granted Reyes a certificate of appealability on the limited issue whether his Three Strikes sentence violated the Eighth Amendment.[2]

## II.

We review *de novo* a district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition. *See Rios v. Garcia*, 390 F.3d 1082, 1084 (9th Cir. 2004). The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub L. No. 104-132, 110 Stat. 1214, govern Reyes' habeas petition. Under AEDPA, habeas relief is proper if the state court's adjudication of the merits of the habeas claim resulted in a decision that was " 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *Rios*, 390 F.3d at 1084 (quoting 28 U.S.C. § 2254(d)). "A state court's decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases[,]' or (2) 'confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a [different] result.' " *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "A state court's decision is an

---

[2]Reyes subsequently filed two requests to broaden the certificate of appealability. We deny those requests in a separate unpublished order filed contemporaneously with this opinion.

unreasonable application of clearly established federal law if 'the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Id.* (quoting *Williams*, 529 U.S. at 413).

## III.

**[1]** Applying AEDPA in *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004), we recognized that Eighth Amendment challenges to Three Strikes sentences remain viable in certain "exceedingly rare" cases. *Id.* at 756, 770; *see also id.* at 763 (noting that the Eighth Amendment's " 'proportionality principle' . . . is applicable 'only in the "exceedingly rare" and "extreme" case' " (quoting *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003))).[3] We applied the Supreme Court's analysis in *Solem v. Helm*, 463 U.S. 277 (1983), to examine as an initial matter "whether [the petitioner's] extreme sentence is justified by the gravity of his most recent offense and criminal history." *Ramirez*, 365 F.3d at 768 (holding that this inquiry gives rise to an inference of gross disproportionality, which then calls for intrajurisdictional and interjurisdictional analyses).

**[2]** We concluded that Ramirez' sentence did not match the gravity of the triggering offense, given that his most recent offense consisted of the nonviolent shoplifting of a VCR. *See id.* Our reasoning that Ramirez' conduct did not "threaten[ ] . . . grave harm to society" applies here, *id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1003 (1991) (Kennedy, J., concur-

---

[3]We note that the California Attorney General declined to seek further review of our decision in *Ramirez*, stating that he was acting in "the interest of justice" and calling *Ramirez* an "exceedingly rare case." Henry Weinstein, *Lockyer Gives Up Three-Strikes Case*, L.A. TIMES, Apr. 30, 2004, at B6, *available at* 2004 WL 55909787.

ring)), where Reyes' act of falsifying a driver's license application was not a crime targeted at another individual.[4]

We next considered Ramirez' criminal history to determine whether the extreme sentence matched his prior offenses. *See id.* at 768-769. Ramirez had been twice convicted of "second-degree robbery, i.e., willfully and unlawfully taking personal property 'by means of force and fear' in violation of California Penal Code §§ 211, 212.5(c), and 213(a)(2), a 'serious felony' under § 1192.7(c)(19)." *Id.* at 757. The first strike involved shoplifting from a grocery store, after which a get-away car driven by a third person ran over the store security guard's foot. *See id.* at 757, 768. In the second offense, Ramirez pushed a security guard away with his open hand as he ran out of K-Mart with stolen goods. *See id.* at 757, 768. Ramirez was found to have committed these offenses with "force" and was prosecuted for and convicted of "second-degree robbery," as opposed to "petty theft" (Cal. Penal Code §§ 484, 488) or "second-degree commercial robbery" (Cal. Penal Code §§ 459-61) because of the physical contact with the security guards. *Id*. at 768. Ramirez served very little time in prison for these two offenses. *See id.* at 769.

---

[4]Signing someone else's name on a driver's license application is specifically proscribed by the California legislature as a misdemeanor. *See* Cal. Veh. Code § 20 ("It is unlawful to use a false or fictitious name, or to knowingly conceal any material fact in any document filed with the [DMV]."); *id.* § 40000.5 (classifying a Vehicle Code § 20 violation as a misdemeanor). The offense does not, however, preclude prosecution of the defendant under Penal Code § 118 for felony perjury, instead of the misdemeanor Vehicle Code section that more accurately proscribed Reyes' conduct, *see People v. Molina*, 5 Cal. App. 4th 221, 231 (1992) (holding that "Vehicle Code section 20 does not preclude perjury prosecutions for those filing false license applications under oath at the DMV"), and in this case, Reyes was convicted after trial of felony perjury. The fact that the California legislature deemed making false statements on a driver's license application to be a misdemeanor reflects that Reyes' offense "is viewed by society as among the less serious offenses." *Solem*, 463 U.S. at 296 (internal quotations omitted).

**[3]** In the instant case, Reyes earned his first strike for residential burglary, in violation of California Penal Code § 459, when he was seventeen years old. He was sentenced to two years at the California Youth Authority and was paroled after one year. Reyes' age and the fact that the offense appeared to be nonviolent[5] — for which he was only required to serve two years at California Youth Authority — weigh against finding this to be a "grave" offense sufficient to justify his twenty-six years to life sentence.

**[4]** The sticking point in this case comes from Reyes' 1987 conviction for armed robbery in violation of California Penal Code § 211. He was sentenced to nine years of which he served five.[6] The record does not reveal the circumstances under which this felony was committed.[7] This conviction rep-

---

[5]The little detail in the record suggests that Reyes was "at some guy's house with some friends and . . . walked out with a radio that didn't belong to" him. 3/4/98 Trial Tr. at 120:8-9.

[6]Reyes also has a history of "non-strike" offenses including petty theft; being under the influence of a controlled substance; misdemeanor DUI; and misdemeanor battery. None of these offenses appear to have involved violence, and unlike the criminal histories of the defendant in *Ewing v. California*, 538 U.S. 11 (2003), and the petitioner in *Andrade*, 538 U.S. 63, Reyes' criminal history became indisputably less serious over time, *see Ramirez*, 365 F.3d at 765-767 (describing Ewing's and Andrade's criminal histories).

[7]The paucity of detail in the record indicates that this offense may have been non-violent. *Compare* 3/4/98 Trial Tr. at 120:17-24 (suggesting that Reyes "was stealing" — "not robbing" but "had a knife" on his person), *with Rios*, 390 F.3d at 1086 (distinguishing *Ramirez* because, during the commission of his triggering offense, "Rios struggled with the loss prevention officer and tried to avoid apprehension" and, during his prior robbery "strikes," Rios' "cohort *used* a knife" (emphasis added)).

The dissent argues that we are being unfaithful to *Ramirez* because *Ramirez* "focuses on the *presence* of a weapon, not whether, how, or where it was or was not *used*" and "Reyes . . . himself, carried the weapon." Dissent at 2641 n.1 (emphasis in original). With respect to our able colleague, we believe that he is misreading *Ramirez*. *Ramirez* never refers to "the presence of a weapon." Rather, each time *Ramirez* refers to weap-

resents a point of departure from *Ramirez,* given the nature of the offense and the nine-year prison term to which Reyes was sentenced.

However, in *Ramirez*, even though the defendant was convicted of two "serious felonies," we considered the factual specifics of Ramirez' conduct. *Ramirez*, 365 F.3d at 767 (looking past the definitions of the crimes of which Ramirez was convicted to determine whether Ramirez' conduct involved violence or was particularly serious). Although Ramirez was twice convicted of robbery "by force," we minimized the gravity of the offenses by noting that in the first strike offense a third person had run over the security guard's foot, resulting in a "minor injury." *Id.* And in the second strike offense, Ramirez pushed away the security guard with his hand on his way out the door. *See id.*

---

ons, it refers exclusively to whether weapons were "involved." 365 F.3d at 757, 768, 775; *see also Rios*, 390 F.3d at 1086 (noting that Ramirez' "prior convictions were for non-violent robberies in which no weapons were *involved*" (emphasis added)). We understand *Ramirez*' use of the word "involved" to mean "engaged or employed." Webster's Encyclopedic Unabridged Dictionary of the English Language 1005 (rev. ed. 1996) (defining "involve" as "to engage or employ"). Surely, involving, engaging, or employing a weapon constitutes more than the mere presence of an unused weapon.

The dissent also asserts that "*Rios* arguably weighs in favor of finding Reyes' punishment justified" because "in *Rios* . . . Rios' *cohort* used a weapon," whereas here "Reyes . . . *himself*, carried the weapon." Dissent at 2641 n.1 (emphasis added). We think our colleague misses the point. *If* Reyes (or an accomplice, if any) actually *used* a knife in the commission of his 1987 robbery, "an inference of gross disproportionality" would not be raised because it is the *use* of a weapon that " 'threaten[s] to cause grave harm.' " *Ramirez*, 365 F.3d at 765, 768 (quoting *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring)). Would our dissenting colleague hold that a shoplifter caught with a small pocket-knife in his pocket necessarily committed a violent crime? In this case, the record is entirely unclear as to whether the conduct underlying Reyes' 1987 conviction involved anything more.

In *Solem*, the Supreme Court found an Eighth Amendment violation where the habeas petitioner was sentenced to life without parole for "uttering" a false check under a recidivist statute. 463 U.S. at 279-80. He had a history of *six* nonviolent felonies, including three separate third-degree burglaries, obtaining money under false pretenses, grand larceny, and driving while intoxicated. *See id*. In considering the gravity of his offenses, the Court noted that "nonviolent crimes are less serious than crimes marked by violence or the threat of violence." *Id*. at 292-93. The Court concluded that "his prior offenses, although classified as felonies, were all relatively minor. *All were nonviolent and none was a crime against a person*." *Id*. at 296-97 (emphasis added).[8]

[5] In the instant case, but for Reyes' armed robbery conviction, Reyes would appear to have a plausible case for relief under *Ramirez*.[9] Unfortunately, the circumstances under which Reyes committed the robbery are not sufficiently developed in the record for us to determine whether the offense was a "crime against a person" or involved violence. Moreover, given that Reyes' first strike was earned as a juve-

---

[8]The dissent labels Reyes a "career criminal" whose "criminal history reflects the very type and degree of recidivism the Supreme Court recognizes Three Strikes laws were properly intended to address." Dissent at 2642 (citing *Rummel v. Estelle*, 445 U.S. 263, 284-85 (1980)). But Reyes is no more a career criminal than the petitioner in *Solem*, who the Supreme Court held was entitled to habeas relief under the Eighth Amendment. *Compare* Dissent at 2642 (noting that, between 1981 and 1997, Reyes committed six crimes) *with Solem*, 463 U.S. at 279-80 (discussing Solem's six convictions for third-degree burglary, obtaining money under false pretenses, grand larceny, and driving while intoxicated).

[9]Our suspicion that Reyes' twenty-six years to life sentence may be grossly disproportionate to the gravity of his triggering offense and criminal history is also supported by the fact that the State offered Reyes a deal of four years imprisonment in exchange for a guilty plea to the triggering perjury charge. By offering Reyes such a heavily discounted sentence, an inference may properly be raised that the State did not view Reyes as a "danger to society" and that the State did not feel "the need to counter his threat with incapacitation." *Andrade*, 538 U.S. at 81 (Souter, J., dissenting).

nile, the gravity of his offenses in total rests heavily on his 1987 armed robbery conviction. More facts, such as those on which we relied in *Ramirez,* would help determine the true weight of the offense beyond the label of the crime ("armed robbery") of which Reyes was convicted. Accordingly, we vacate the district court's denial of Reyes' habeas petition and remand for the district court to develop the record further and to determine in the first instance whether Reyes is entitled to relief under *Ramirez.*

The panel shall retain jurisdiction over this matter.

VACATED and REMANDED.

---

TALLMAN, Circuit Judge, dissenting:

In *Ewing* and *Andrade*, the United States Supreme Court found that California Three Strikes sentences at issue did not violate the Eighth Amendment prohibition on cruel and unusual punishment. *Lockyer v. Andrade*, 538 U.S. 63 (2003), *Ewing v. California*, 538 U.S. 11 (2003). In its opinions, the Court allowed for the remote possibility of finding a statutory punishment unconstitutional when it is "grossly dispropor-tionate." *Andrade*, 538 U.S. at 73; *see also Ewing*, 538 U.S. at 23 (noting that the Eighth Amendment contains a narrow "proportionality principle that applies to noncapital sen-tences") (internal quotations and citations omitted). The Court did not elaborate what types of violations this exception might encompass, but warned that "it is applicable 'only in the exceedingly rare and extreme case.' " *Ramirez v. Castro*, 365 F.3d 755, 763 (9th Cir. 2004) (discussing *Andrade*, 538 U.S. at 72-73). This is not one of them.

After the Court's decisions in *Ewing* and *Andrade*, the Ninth Circuit quickly found such an exceedingly rare case in *Ramirez*. Although *Ramirez* is now the law of the circuit for

habeas challenges to Three Strikes sentences, its analysis is less than ideal. The *Ramirez* opinion sets forth what is, at best, a nebulous balancing test for analyzing whether a lengthy Three Strikes sentence violates the proportionality principle: whether the sentence is "justified by the gravity of [the petitioner's] most recent offense and criminal history." *Ramirez*, 365 F.3d at 768; *see also Ewing*, 538 U.S. at 29 (noting that, when considering the gravity of the offense, the court "must place on the scales not only his current felony," but also his criminal history).

In determining the gravity of the triggering offense and criminal history, *Ramirez* instructs courts to examine the "core conduct" of the crimes and consider: (1) whether the crime involved the use of force; (2) whether weapons were present;[1] (3) whether the crime was violent in nature; and (4) the length and type of sentence imposed. *See Ramirez*, 365 F.3d at 768-69 (discussing the factors of Ramirez's triggering offense and criminal history that were relevant in determining whether the sentence was justified).[2]

---

[1]The panel majority attempts to distinguish *Reyes* from *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004), by focusing on the fact that Rios' cohort *used* a weapon. This sort of parsing is unpersuasive in distinguishing the two cases and also illustrates the difficulties of following precedent such as *Ramirez*. First, as unworkable as *Ramirez* is, it focuses on the *presence* of a weapon, not whether, how, or where it was or was not *used*. Second, even *Rios* arguably weighs in favor of finding Reyes' punishment justified; in *Rios*, the court found his punishment justified simply because Rios' cohort had a weapon. Reyes has no such excuse because he, himself, carried the weapon. Finally, *Rios* and the majority opinion here foretell what is to come in the wake of *Ramirez*: inconsistent outcomes in cases depending on whether individual panels choose to focus on the *presence* versus the *use* versus the *involvement* of a weapon. Surely the Eighth Amendment analysis must rely on more substantive distinctions. All three cases err in ignoring the key point that the Three Strikes Statute punishes recidivism, not subtle differences between the nature of the triggering offense or prior offenses.

[2]Ramirez did not explicitly list a set of factors to consider when making this inquiry, nor did it explicitly state that this was a balancing test, leaving future panels with the unfortunate task of gleaning clear guidelines from the opinion.

The court here declares that *Reyes* potentially presents another one of these *exceptionally* rare cases, and that an evidentiary hearing is required in order to determine whether Reyes' punishment violated the proportionality principle. Based on Supreme Court and Ninth Circuit precedent, I disagree with both of these propositions. However much individual judges chafe at the Supreme Court's decisions in *Ewing* and *Andrade* or the electorate's continuing and clear expression of support for tough treatment of repeat offenders, our obligation is to apply the law which the Supreme Court upheld in *Andrade* and *Ewing*.

Reyes does not present an "extraordinary" rare case; he is a career criminal. Between 1981 and 1997, he committed six crimes and spent almost seven years behind bars, five of which were passed in state prison. His criminal history reflects the very type and degree of recidivism the Supreme Court recognizes Three Strikes laws were properly intended to address. *Rummel v. Estelle*, 445 U.S. 263, 284-85 (1980) (rejecting an Eighth Amendment challenge to Texas' recidivist statute). Furthermore, even if a narrow class of cases exist that might constitute an unusual exception, Ramirez's criminal history pales in comparison to Reyes' sixteen years of on-again, off-again criminality. I would not characterize the nature of Reyes' prior convictions as charitably as does the majority, particularly where Reyes has been convicted of battery, armed robbery, and driving while under the influence, all of which pose a potential of seriously injuring other people.

There is no need for an evidentiary hearing. While the *Ramirez* balancing test is admittedly vague, at least two of the four factors that the *Ramirez* court considered relevant weigh heavily in favor of finding Reyes' sentence justified. First, Reyes was convicted of *armed* robbery; contrary to the panel majority's inferences, this strike certainly involves at least the *presence* of a weapon during the commission of a violent crime. Second, Reyes served five years of a nine-year state prison sentence for his armed robbery conviction. Not only is

this a lengthy sentence, but *Ramirez* explicitly noted that a critical consideration in determining whether a sentence is proportionate is whether the petitioner has ever "been sentenced to [or] served any time in *state prison* prior to committing" the triggering offense. *Ramirez*, 365 F.3d at 769 (emphasis added). These facts strongly distinguish Reyes' case from *Ramirez* and justify the Three Strikes sentence imposed.

It is unclear what sorts of facts the court here anticipates will be revealed during the evidentiary hearing, or what difference they will make in the proportionality inquiry. It is also unclear what facts the district court on habeas review is permitted to revisit in its "core conduct" inquiry in the face of a final state criminal judgment that Reyes committed a robbery while armed. Because *Ramirez* sets forth a balancing test, the district court must simply determine that, in consideration of the four factors, and particularly his pattern of continuing criminal behavior, Reyes' prior time spent in state prison and his earlier conviction for armed robbery render his Three Strikes sentence for perjury justified under controlling Supreme Court precedent. There is no need for an evidentiary hearing to reach that conclusion on the record already before us.

I would deny Reyes' petition for rehearing and petition for rehearing en banc. Accordingly, I **DISSENT** from this futile remand.