**Cornel Ray JOSHUA, Petitioner–Appellant,**

v.

**D.G. ADAMS, Warden, Respondent–Appellee.**

No. 05–55437.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2007.

Filed May 2, 2007.

Cornel Ray Joshua, Vacaville, CA, pro se.

Jerry Sies, Esq., Los Angeles, CA, for Petitioner–Appellant.

David F. Glassman, Esq., Lawrence M. Daniels, Esq., Office of the California Attorney General, Los Angeles, CA, for Respondent–Appellee.

Before: FERGUSON, SILER,* and HAWKINS, Circuit Judges.

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.
** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

**593**

MEMORANDUM **

Petitioner Cornell Ray Joshua appeals the district court's order denying his 28 U.S.C. § 2254 habeas corpus petition. For the reasons that follow, we affirm the district court.

█ Pursuant to California's Three Strikes law, Joshua was sentenced to twenty-five years to life for stealing two bottles of alcohol, in violation of California Penal Code § 666. On appeal, Joshua argues that his sentence violates the Eighth Amendment's proscription against "cruel and unusual punishments" because he suffers from paranoid schizophrenia. Because Joshua filed his petition for collateral review after April 24, 1996, he must satisfy the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) onerous standard of review. *See Edwards v. Lamarque,* 475 F.3d 1121, 1125 (9th Cir. 2007) (en banc).[1] We may not grant Joshua habeas relief unless we find that the state court's last reasoned decision was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *Renderos v. Ryan,* 469 F.3d 788, 793 (9th Cir.2006).

Joshua contends that the California Court of Appeal failed to apply clearly established federal law based on the Supreme Court's decisions in *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (death penalty for crimes committed as juvenile unconstitutional), *Tennard v. Dretke,* 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (in death

1. The issue in this case is *not* whether Joshua's sentence is grossly disproportionate to his crimes, but rather whether the state court's conclusion that it was not is contrary to clearly established Supreme Court law.

penalty context, "[i]mpaired intellectual functioning is inherently mitigating"), and *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (execution of mentally retarded individual unconstitutional). However, those cases dealt with capital sentences and are therefore distinguishable. Absent a Supreme Court decision clearly establishing that mental illness renders a non-capital sentence unconstitutional, we are unable to grant Joshua habeas relief.

■ Joshua also contends that the state court ignored his mental illness, which rendered him unable to control his behavior, and his sentence was actually a penalty for his illness and is therefore contrary to clearly established federal law, as set forth in *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (criminalizing addiction unconstitutional). This contention is without merit because, in contrast to *Robinson*, where a statute specifically criminalized addiction, Joshua was convicted of a criminal offense separate and distinct from his "status" as a schizophrenic. Joshua's contention may have been appropriate as part of his defense at trial, but is misplaced in our habeas review.[2]

**AFFIRMED.**

FERGUSON, Circuit Judge, dissenting:

Cornel Ray Joshua, a paranoid schizophrenic, received an indeterminate life sentence for stealing two bottles of alcohol valued at $62.[1] Such a sentence is nothing if not cruel and unusual. Because "[t]his age of enlightenment cannot tolerate such barbarous action," *Robinson v. California*, 370 U.S. 660, 678, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (Douglas, J., concurring), I dissent.

Based on the Eighth Amendment's disproportionality principle, clearly established by *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), Joshua's sentence should be reversed due to his diminished culpability as a paranoid schizophrenic.[2] The Supreme Court's disproportionality cases make frequent references to a defendant's "culpability" in determining whether the sentence constitutes cruel and unusual punishment. Joshua's mental illness impacted his culpability and, accordingly, his indeterminate life sentence for petty theft with a prior theft violation was contrary to clearly established federal law.

### I.

The Supreme Court has clearly established that the Eighth Amendment's proscription against cruel and unusual punishment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem*, 463 U.S. at 284, 103 S.Ct. 3001.

---

**2.** Because Joshua also raises an uncertified issue, we construe his argument as a motion to expand the Certificate of Appealability, and we deny the motion. *See* 9th Cir. 22–1(e); *Hiivala v. Wood*, 195 F.3d 1098, 1104–05 (9th Cir.1999) (per curiam).

**1.** Joshua's sentence is truly shocking when compared to that of Jeffrey Skilling, the former CEO of Enron, who received a sentence of twenty-four years and four months (eight months less than Joshua's minimum sentence of twenty-five years) for his central role in fraudulently bankrupting the $63,000,000,000 Enron Corporation. Joshua's minimum sentence is lengthier than that of someone whose crime caused literally one billion times more monetary damage than Joshua's $62 shoplifting crime.

**2.** According to a report following a court-ordered psychiatric evaluation, Joshua "is clearly psychotic and a substance abuser."

We have repeatedly applied this disproportionality standard in habeas cases arising out of California's "Three Strikes" law. In *Ramirez v. Castro*, 365 F.3d 755 (2004), we held that the defendant's indeterminate life sentence under the Three Strikes law was contrary to clearly established law on cruel and unusual punishment. In *Ramirez*, the defendant shoplifted a $199 VCR from a department store and was immediately caught and detained without struggle outside the store. *Id.* at 756. Ramirez's record included two prior serious or violent felony convictions, both of which were for second-degree robbery. *Id.* at 757. The first conviction was for a shoplifting incident in which the getaway car, driven by Ramirez's accomplice, accidently drove over a security guard's foot. *Id.* The second conviction was for another shoplifting incident in which Ramirez shoved a security guard out of the way with one hand as he was running out of the store. *Id.*

We identified in *Ramirez* the criteria for determining whether a sentence is unconstitutionally disproportionate under *Solem*. *Id.* at 764. First, the reviewing court looks to "the gravity of the offense and the harshness of the penalty." *Id.* (quoting *Solem*, 463 U.S. at 289–90, 103 S.Ct. 3001). If this analysis "raises an inference of gross disproportionality," *Id.* at 770 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)), the court then compares the sentence to those imposed for other crimes in the same jurisdiction, as well as those imposed for the same crime in other jurisdictions. *Id.* at 764 (citing *Solem*, 463 US. at 292, 103 S.Ct. 3001).

Significantly, we noted that "[i]n performing [the] objective analysis [of disproportionality], the Court [in *Solem* ] further endorsed consideration of 'other accepted principles that courts may apply in measuring the harm caused or threatened to the victim or society,' such as the 'absolute magnitude of the crime' and the offender's '*culpability.*' " *Id.* (citing *Solem*, 463 US. at 292, 103 S.Ct. 3001) (emphasis added).

In applying this test, we found that Ramirez's sentence raised an inference of gross disproportionality. *Id.* at 767. We began by looking at the "core conduct" of Ramirez's third strike, noting that his "nonviolent shoplift did not threaten[ ] to cause grave harm to society." *Id.* at 768 (quoting *Harmelin*, 501 U.S. at 1003, 111 S.Ct. 2680). We then "place[d] on the scales" Ramirez's criminal history, *id.* (quoting *Ewing v. California*, 538 U.S. 11, 29, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003)), by reviewing the underlying facts of the predicate offenses. Though Ramirez had run over one security guard's foot and pushed another, his crimes were "nonviolent in nature." *Id.* None of the offenses involved weapons, and Ramirez had been sent to county jail only once. *Id.* at 768–69. The seriousness of the prior crimes was one of the factors distinguishing Ramirez from the defendants in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), and *Ewing*, 538 U.S. 11, 123 S.Ct. 1179, two cases in which the Supreme Court upheld indeterminate life sentences in Three Strikes cases. *Ramirez*, 365 F.3d at 769.

Because Ramirez's sentence gave rise to a inference of gross disproportionality, we then performed intra- and inter-jurisdictional analyses, comparing his sentence to those for other crimes in California and for recidivism in other jurisdictions. *Id.* at 770. We noted that criminals committing much worse crimes would receive shorter sentences and that Ramirez would not have received an indeterminate life sentence un-

der other jurisdictions' recidivism statutes. *Id.* at 770–773.

We concluded that the state court's affirmation of Ramirez's sentence was an unreasonable application of clearly established law under AEDPA. *Id.* at 775.

Just a few months after *Ramirez*, we issued another Eighth Amendment Three Strikes opinion in *Rios v. Garcia*, 390 F.3d 1082 (2004), upholding a defendant's sentence on habeas review. The defendant in *Rios* had shoplifted two watches worth $79.98 from K–Mart, and had two prior convictions for second degree robbery. *Id.* at 1083. We distinguished *Rios* from *Ramirez*, noting that *Rios* had struggled with the store's security guard, that *Rios's* prior strikes involved the use of a knife by his cohort, and that *Rios* had "a lengthy criminal history." *Id.* at 1086.

Just a few months after *Rios*, we again dealt with the Three Strikes issue in *Reyes v. Brown*, 399 F.3d 964 (2005). In *Reyes*, the defendant received his third strike for perjury after lying on an application for a California driver's license. *Id.* at 965. Reyes's two prior strikes were for residential burglary and armed robbery. *Id.* at 966. Applying the framework from *Ramirez*, we first determined that Reyes's act of lying on a driver's license application did not "threaten[ ] . . . grave harm to society." *Id.* at 967 (quoting *Ramirez*, 365 F.3d at 768). We then considered Reyes's criminal history, noting that his residential burglary conviction occurred at a young age and was nonviolent. *Id.* at 968. We observed that his armed robbery conviction could have been sufficient to justify the sentence, but realized that the issue turned on whether Reyes had actually used a weapon or simply had one present. *Id.* at 968 n. 7. We pointed out that in *Ramirez* we had "considered the factual specifics of Ramirez' conduct." *Id.* at 969. We concluded that we did not have sufficient information to look at the underlying facts of Reyes's prior armed robbery conviction and remanded for further development of the record on that issue. *Id.* at 969–70. Our decision implied that if Reyes had not used the weapon during the armed robbery, his prior strikes would be insufficient under *Ramirez* and *Solem* to justify the life sentence for perjury. *Id.*

This court revisited the Three Strikes issue for a fourth time in *Taylor v. Lewis*, 460 F.3d 1093 (2006). In *Taylor*, the defendant's third strike was a drug offense involving .036 grams of cocaine base. *Id.* at 1095. His prior strikes were for voluntary manslaughter and robbery with a firearm enhancement. *Id.* at 1095–96. We refused to accept Taylor's argument that his drug crime was less serious than the property crimes in *Ewing* and *Andrade*. *Id.* at 1099. Taylor's prior strikes were also serious: his manslaughter conviction stemmed from a fight in which he stabbed and killed a victim; his robbery conviction resulted from an incident in which he threatened a clerk with a gun. *Id.* at 1101. We stated that the defendant's criminal history was "marked by violence and the intentional taking of human life and spann[ed] some 30 years." *Id.* Accordingly, we did not find the indeterminate life sentence disproportionate and denied the habeas petition. *Id.* at 1101–02.

From *Ramirez*, *Rios*, *Reyes*, and *Taylor*, the rule in this circuit is that where a triggering offense does not threaten grave harm to society, the court will look to the underlying facts of prior felonies to determine the defendant's culpability. This involves considering whether the past strikes were violent, whether a weapon was actually used, whether the defendant was a juvenile, and whether the defendant has spent a significant amount of time in prison. If this analysis raises an inference of gross disproportionality, we will com-

pare the defendant's sentence to those for other crimes in the same jurisdiction and those for the same crime in other jurisdictions. We must grant a habeas petition if the above factors indicate that the sentence is disproportionate.

## II.

Under the Eighth Amendment jurisprudence explained above, Joshua's sentence is unconstitutional. Joshua's third strike, shoplifting $62 of alcohol, certainly did not threaten grave harm to society. See *Ramirez*, 365 F.3d at 768. By the government's own account, "he was cooperative" and did not attempt to hurt anyone, even after the store employee tackled him and held him down. *Cf. Id.* at 756.

Admittedly, Joshua's prior felonies cut against a finding of disproportionality. His prior felony convictions include two first degree robberies, two second degree robberies, one unspecified robbery, one armed robbery, and one drug crime. The record is unclear, however, whether any of these crimes involved the *use* of a weapon. In *Reyes*, we refused to take the armed robbery conviction at face value, inquiring further whether the defendant had merely possessed the weapon or had actually used it. *Reyes*, 399 F.3d at 969. Nothing in the record shows that Joshua actually used a weapon during the armed robbery for which he was convicted. Therefore, his armed robbery conviction does not disqualify him from habeas relief.

## III.

Despite Joshua's prior convictions and prison terms, his sentence is unconstitutional based upon the "culpability" consideration raised in the Supreme Court's *Solem* opinion. *Solem*, 463 U.S. at 292, 103 S.Ct. 3001. In *Solem*, the Court stated, "Application of [the proportionality] factors assumes that courts are competent to

judge the gravity of an offense, at least on a relative scale.... Comparisons can be made in light of the harm caused or threatened to the victim or society, and the *culpability of the offender.*" *Id.* (emphasis added).

Courts frequently reference defendants' culpability in Eighth Amendment cases. *See, e.g., Cooper Indus. v. Leatherman Tool Group*, 532 U.S. 424, 435, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (recognizing culpability as important criteria for Eighth Amendment excessive fines claim); *Harmelin*, 501 U.S. at 1022, 111 S.Ct. 2680 (White, J., dissenting) ("[I]n evaluating the gravity of the offense, it is appropriate to consider the harm caused or threatened to the victim or society ... and the culpability of the offender, including the degree of requisite intent and the offender's motive ....") (internal punctuation omitted); *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ("punishment should be directly related to the personal culpability of the criminal defendant"), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); *Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (defendant's "punishment must be tailored to his [or her] personal responsibility and moral guilt"); *Taylor*, 460 F.3d at 1098 ("Comparisons among offenses can be made in light of, among other things, ... the culpability of the offender...."); *Ramirez*, 365 F.3d at 764 ("[T]he [Supreme] Court [in *Solem* ] further endorsed consideration of other accepted principles that courts may apply in measuring the harm caused or threatened to the victim or society, such as ... the offender's culpability."); *Eckert v. Tansy*, 936 F.2d 444, 448 (9th Cir.1991) ("When measuring the gravity of the offense, we consider the actual harm caused or threatened during

the crime as well as the defendant's culpability in committing it."); *Cocio v. Bramlett*, 872 F.2d 889, 892 (9th Cir.1989) ("The type of harm threatened or caused and the level of the defendant's culpability determine the gravity of the offense."); *United States v. Busher*, 817 F.2d 1409, 1415 (9th Cir.1987) ("*Solem* noted that, in considering the gravity of the offense, a court should look both at the harm suffered by the victim and the defendant's culpability."); *People v. Webb*, 6 Cal.4th 494, 24 Cal.Rptr.2d 779, 862 P.2d 779, 806 (1993) ("[T]he Eighth Amendment of the United States Constitution and article I, section 17 of the California Constitution preclude punishment that is disproportionate to a defendant's individual culpability."); *People v. Dillon*, 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697, 721 (1983) ("[A] punishment which is not disproportionate in the abstract is nevertheless constitutionally impermissible if it is disproportionate to the defendant's individual culpability."); *In re Lynch*, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 939 (1972) (punishment should "not only . . . fit the crime," it should also "fit the criminal"); *see also* Tom Stacy, *Cleaning Up the Eighth Amendment Mess*, 14 Wm. & Mary Bill of Rts. J. 475, 496 (2005) ("Construed in light of a principle of proportionality, the Eighth Amendment forbids punishments that are grossly disproportional to the actual or threatened harm and the offender's culpability.").

It is an axiom of criminal law that mental illness bears heavily on an individual's culpability. We have recognized "the belief, long held by this society, that defendants who commit criminal acts that are attributable . . . to emotional and mental problems[ ] may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O' Connor, J., concurring); *see also*, American Bar Association, ABA Criminal Justice Standards Committee, ABA Criminal Justice Mental Health Standards, Standard 7–6.1 (1989) ("A person is not responsible for criminal conduct if, at the time of such conduct, and as a result of mental disease or defect, that person was unable to appreciate the wrongfulness of such conduct."); *id.* Standard 7–6.1 cmt. at 331 (tracing diminished culpability defense to the early seventeenth century); Model Penal Code § 4.01 ("A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law."); Cal. Rules of Court, Rule 4.423(b)(2) ("Circumstances in mitigation . . . include the fact that . . . [t]he defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime."); John Parry and F. Philips Gilliam, ABA Commission on Mental and Physical Disability Law, Handbook on Mental Disability Law 223 (2002) ("Diminished culpability, and the mental status . . . defenses that derive from this concept, constitute a fundamentally important boundary marker in the criminal law and our notions of justice.").

This diminished culpability is especially applicable in the case of paranoid schizophrenics such as Joshua.

[P]eople who suffer from schizophrenia experience "a range of cognitive and emotional dysfunctions that include perception, inferential thinking, language and communication, behavioral monitoring, affect, fluency and productivity of thought and speech, hedonic capacity, volition and drive, and attention." The specific symptoms include delusions, hallucinations, disorganized speech, and grossly disorganized behavior. Put even

more functionally, people with schizophrenia have difficulty focusing on essential information, are easily distracted by irrelevant stimuli, often experience "thought blocking" (involving a complete halt to thinking), attribute elaborate meaning to what they see and hear, engage in combative thinking (involving the reduction of impressions into unrealistic beliefs), and have difficulty forming abstract concepts correctly. . . . [P]eople who suffer from psychosis also have great difficulty in communicating with and understanding others, engaging in logical cost-benefit analysis, and evaluating the consequences of and controlling their behavior.

Christopher Slobogin, *What Atkins Could Mean for People with Mental Illness*, 33 N.M.L.Rev. 293, 303–04 (2003) (quotations omitted); *compare Atkins*, 536 U.S. at 306, 122 S.Ct. 2242 ("Because of their disabilities in areas of reasoning, judgment, and control of their impulses . . . [mentally retarded persons] do not act with the level of moral culpability that characterizes the most serious adult criminal conduct.") with Slobogin, *supra*, at 303 ("[T]he cognitive and volitional impairment associated with active schizophrenia is likely to be much more severe than that which occurs with mental retardation or immaturity.").

The Supreme Court considered diminished culpability in *Solem*, noting that in all of Solem's past crimes, "alcohol was a contributing factor." *Solem*, 463 U.S. at 280, 103 S.Ct. 3001. In *Reyes*, we noted that "Reyes' age . . . weigh[s] against finding [his prior felony] to be a 'grave' offense sufficient to justify his twenty-six years to life sentence." *Reyes*, 399 F.3d at 968. If the diminished culpability caused by youthfulness and alcoholism influences the inquiry, so must that caused by mental illness.[3]

Given the uncontroversial premises that (1) the Eighth Amendment is rooted in notions of individual culpability and (2) mental illness diminishes culpability, I see no other logical conclusion than that Joshua's sentence violates the Eighth Amendment.

### IV.

The majority states that "[a]bsent a Supreme Court decision clearly establishing that mental illness renders a non-capital sentence unconstitutional, we are unable to grant Joshua habeas relief." I disagree. The disproportionality principle is clearly established for AEDPA purposes.[4] *Andrade*, 538 U.S. at 72, 123 S.Ct. 1166; *Solem*, 463 U.S. at 284, 103 S.Ct. 3001. The same is true for the principle that a defendant's personal culpability is relevant to his or her sentence. *Solem*, 463 U.S. at 292, 103 S.Ct. 3001; *Cooper Indus.*, 532

---

**3.** Taking diminished culpability into account would not contravene the will of the voters who passed the ballot initiative to establish the Three Strikes law. See Francis T. Cullen, Bonnie S. Fisher, and Brandon K. Applegate, *Public Opinion About Punishment and Corrections*, 27 Crime & Just. 1, 39 (2000) ("[A] majority of the sample favored making exceptions [to three strikes laws] when a third offense was relatively minor, *when the offender was mentally ill*, when the inmate is rehabilitated while in prison, and when incarcerating the offender would mean that a more dangerous inmate would have to be re-

leased.") (emphasis added). The Supreme Court has looked to public opinion in determining, under the Eighth Amendment, "the evolving standards of decency that mark the progress of a maturing society." *Atkins*, 536 U.S. at 312, 122 S.Ct. 2242 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)), 316 n. 21.

**4.** I note my agreement with Judge Noonan's concurring opinion in *Irons v. Carey*, 479 F.3d 658 (9th Cir.2007) (suggesting that AEDPA is unconstitutional).

U.S. at 435, 121 S.Ct. 1678; *Enmund,* 458 U.S. at 801, 102 S.Ct. 3368.

The majority's reading of AEDPA's "clearly established" requirement is far too limiting. The Supreme Court has held that "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Williams v. Taylor,* 529 U.S. 362, 382, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "[A] rule is designed for the specific purpose of evaluating a myriad of factual contexts, and thus a novel factual situation may nonetheless be dictated by Supreme Court precedent." *Robinson v. Ignacio,* 360 F.3d 1044, 1057 (9th Cir.2004) (citations omitted); *see Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002) (clearly established "federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context").

This is just such a "novel factual situation" in which the outcome is dictated by the Supreme Court's numerous cases involving disproportionate sentences and diminished culpability. This conclusion is buttressed by the plethora of Ninth Circuit cases discussed above. While our cases are not "clearly established Federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), they are "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–601 (9th Cir.1999). As we held in *Ignacio,* "when faced with a novel situation we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision

violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law." *Ignacio,* 360 F.3d at 1057.

The Supreme Court's disproportionality cases, as well as our own jurisprudence interpreting the principle, clearly establish that sentences that are excessive in light of the defendant's diminished culpability violate the Eighth Amendment. Accordingly, sentencing a schizophrenic man to an indeterminate life sentence for stealing $62 worth of alcohol is unconstitutional.

## V.

For these reasons, the sentence is contrary to clearly established federal law as determined by the Supreme Court. I would reverse the district court and grant the writ.